*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIAN JAMES DAVIDSON,

        Plaintiff-Appellee,

v

JAMIE LYNN HANCE,

        Defendant-Appellant.

UNPUBLISHED
May 20, 2025
2:10 PM

No. 372960
Newaygo Circuit Court
LC No. 2019-056277-DP

Before: PATEL, P.J., and BOONSTRA and CAMERON, JJ.

PER CURIAM.

Defendant appeals by right the trial court's grant of primary physical custody and sole legal custody of the minor child, EH, to plaintiff. More specifically, defendant appeals the trial court's denial of her objection to the Friend of the Court referee's recommendation. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties are the unwed parents of EH. In January 2019, plaintiff filed a verified complaint seeking joint physical and legal custody of EH, which defendant opposed, requesting sole custody instead. Eventually, the parties agreed to share joint legal custody, with defendant having primary physical custody and plaintiff having regular parenting time. Over the next several years, the relationship between the parties was contentious, with numerous disputes over parenting time, medical decisions, schooling decisions, and other parenting issues requiring court intervention. A particular source of conflict was EH's toileting issues, which caused EH to experience frequent accidents, sometimes multiples times a day. The parties disagreed on the source of EH's toileting issues and, consequently, what type of treatment would resolve the issues. The parents' inability to cooperate to obtain medical care for EH resulted in the trial court being called upon multiple times to issue orders that, among other things, required the parents to consult specific specialists, to follow the specialists' recommendations, and to not cancel any treatment appointments except for an emergency. The trial court also issued a number of orders addressing

record-keeping in Our Family Wizard[1] (OFW), including what data to record, what information to share with the other parent, and when to update journals and share information. The parents also disputed whether EH should attend preschool, then kindergarten, and then first grade. Plaintiff opposed school attendance because of EH's young age and because her toileting issues were not resolved; defendant was in favor of school attendance because EH was an intelligent child and because defendant believed that routine and structure would help resolve her toileting issues. The trial court was called upon to resolve these disputes as well, denying plaintiff's request to delay EH starting kindergarten but granting plaintiff's later request to delay her starting first grade.

In April 2024, plaintiff filed a verified ex parte motion alleging "ongoing medical neglect" of EH by defendant. Plaintiff alleged that defendant did not adequately share information, did not follow the recommendations of medical providers, and did not comply with the intent of the trial court's orders. Plaintiff further alleged that defendant had not properly addressed EH's toileting issues, did not schedule appointments in a timely manner, and did not record the appointments on the calendar in OFW. Plaintiff asked the trial court to award him primary physical and legal custody of EH temporarily, until a hearing on his ex parte motion, so that he could ensure that EH attended upcoming medical and counseling appointments. The trial court denied plaintiff's ex parte motion, but it entered an alternate ex parte order that gave plaintiff "extended parenting time" and "sole legal custody" until further order of the court. Beginning May 10, 2024, defendant's parenting time was restricted to alternate weekends.

Defendant objected to the trial court's ex parte order, alleging that it had changed legal custody and significantly modified her parenting time without an evidentiary hearing and without the requisite analyses and findings regarding EH's established custodial environment and best interests. After a hearing on defendant's objections, the trial court referred to matter to the circuit court referee. The trial court instructed plaintiff to move for a change in custody and stated that the referee could hear defendant's objections to the ex parte order and plaintiff's petition for a change in custody at the same hearing. As directed by the trial court, plaintiff moved for primary physical and sole legal custody on a permanent basis.

A two-day hearing before the circuit court referee resulted in a recommendation to grant primary physical and sole legal custody of EH to plaintiff and to award defendant parenting time according to the Friend of the Court parenting-time-policy schedule. The referee's findings emphasized the importance of EH's healthcare and the need for effective coparenting. Defendant objected to the referee's recommendations, arguing that they were inconsistent with the evidence and not in EH's best interests. However, the trial court denied defendant's objections and adopted the referee's recommendations, noting the significant medical issues that EH faced and the parties' inability to coparent effectively. This appeal followed.

---

[1] "Our Family Wizard is an electronic messaging program that a trial court may order parties to use to communicate regarding custody and parenting-time matters when other methods of communication have proved contentious or ineffective." *Kuebler v Kuebler*, 346 Mich App 633, 650 n 6; 13 NW3d 339 (2023).

## II. STANDARD OF REVIEW

On appeal, this Court must affirm all orders and judgments of the circuit court pertaining to a child custody dispute "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28.

"The great weight of the evidence applies to all findings of fact." *Vodvarka v Grasmeyer*, 259 Mich App 499, 507; 675 NW2d 847 (2003) (quotation marks and citation omitted). A trial court's finding is against the great weight of the evidence when it is so contrary to the weight of the evidence that it is unwarranted or is so plainly a miscarriage of justice that it would warrant a new trial. *Fletcher v Fletcher*, 447 Mich 871, 878; 526 NW2d 889 (1994).

"An abuse of discretion standard is applied to a trial court's discretionary rulings such as custody decisions." *Vodvarka*, 259 Mich App at 507 (quotation marks and citation omitted). With respect to custody issues, a palpable abuse of discretion exists "when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).

"Questions of law are reviewed for clear legal error." *Vodvarka*, 259 Mich App at 508 (quotation marks and citation omitted). "Clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law." *Brown v Brown*, 332 Mich App 1, 9; 955 NW2d 515 (2020) (quotation marks and citation omitted). We review de novo the trial court's application of the law to the facts, see *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015), and give "deference to the trial court's factual judgments and special deference to the trial court's credibility assessments," *Brown*, 332 Mich App at 8.

## III. EX PARTE ORDER

Defendant argues that the trial court clearly erred by entering an ex parte order that changed legal custody and effectively changed physical custody without making any findings required by the Child Custody Act (CCA), MCL 722.21 *et seq*. We agree that the trial court erred; however, we conclude that the error was harmless.

In relevant part, MCL 722.27(1)(c) authorizes trial courts to modify or amend prior custody orders for proper cause or because of a change of circumstances. MCL 722.27(1)(c) also provides that "[t]he court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." Therefore, before modifying or amending a custody or parenting-time order, a trial court must first determine whether a preponderance of the evidence establishes a proper cause or change of circumstances that warrants revisiting the order. *Vodvarka*, 259 Mich App at 509.

If proper case or change of circumstances has been established, the trial court must next determine whether there exists an established custodial environment. *Barretta v Zhitkov*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 364921 and 360578); slip op at 7. Whether an established custodial environment exists determines the applicable evidentiary burden for the

-3-

party seeking to modify the custody or parenting-time order. *Id*. If no established custodial environment exists, or if the proposed change would not alter the established custodial environment, then the proponent of the change must demonstrate by a preponderance of the evidence that the change in the child's best interests. If a proposed change would alter a child's established custodial environment, then the proponent of the change must prove by clear and convincing evidence that the change is in the child's best interests. *Kuebler v Kuebler*, 346 Mich App 633, 670-671; 13 NW3d 339 (2023). The trial court cannot modify an established custodial environment, even on a temporary basis, without clear and convincing evidence that doing so is in the best interests of the child after an evidentiary hearing held for that purpose. See *O'Brien v D'Annuzio*, 507 Mich 976, 977 (2021); *Barretta*, ___ Mich App at ___; slip op at 6. The standards for changing custody apply equally to physical and legal custody. *Kuebler*, 346 Mich App at 668.

Under the parties' previous custody order, defendant had primary physical custody of EH, plaintiff had parenting time, and the parties had joint legal custody. This was the custody and parenting-time arrangement in April 2024, when plaintiff moved ex parte for primary physical custody and sole legal custody on a temporary basis. Although the trial court did not grant plaintiff's ex parte motion, the court nevertheless entered an ex parte order that changed the parties' joint legal custody to sole legal custody in favor of plaintiff. The trial court also gave plaintiff "extended parenting time." However, granting plaintiff extended parenting time effectively changed defendant's primary physical custody. Under the prior custody order, apart from holiday parenting time, defendant had parenting time with EH 10 days out of every 14 days, while plaintiff had parenting time with EH 4 days during the same period. The trial court's ex parte order essentially flipped this arrangement. Although "minor modifications that leave a party's parenting time essentially intact do not change a child's established custodial environment, significant changes do." *Lieberman v Orr*, 319 Mich App 68, 89-90; 900 NW2d 130 (2017) (quotation marks and citation omitted). In other words, "[a] sufficiently drastic alteration in parenting time, such as relegating a parent who previously had equal parenting time to a weekend parent, will constitute a change in custody." *Stoudemire v Thomas*, 344 Mich App 34, 45; 999 NW2d 43 (2022) (quotation marks and citation omitted). We conclude that the trial court's ex parte order constituted a change in custody, notwithstanding the trial court styling the change as giving plaintiff extended parenting time. See *Barretta*, ___ Mich App at ___; slip op at 8; *Stoudemire v Thomas*, 344 Mich App at 45. Therefore, the trial court committed clear legal error by issuing an ex parte order that changed legal custody and effectively changed physical custody without fulfilling its statutory obligations under MCL 722.27(1)(c). See *Stoudemire*, 344 Mich App at 45.

Nevertheless, we conclude that the trial court's error was harmless in light of subsequent proceedings. See *O'Brien*, 507 Mich at 977; *Barretta*, ___ Mich App at ___; slip op at 11, 12; see also MCR 2.613(A). A significant harm associated with entering an order that changes custody without making the factual and legal findings required by MCL 722.27(1)(c) is that the order may create circumstances that modify a child's established custodial environment and affect a parent's evidentiary burdens at subsequent custody hearings. See *Daly v Ward*, 501 Mich 897, 898 (2017). Therefore, whether the trial court's erroneous entry of the ex parte order in April 2024 was harmless depends on how the circumstances created by the order affected the trial court's findings after the July 2024 hearing. See *O'Brien*, 507 Mich at 976; *Daly*, 501 Mich at 898. Defendant does not identify—nor does the record suggest—any actual effect of the ex parte order on the trial court's factual and legal findings.

The hearing referee based his finding of proper cause on the parties' longstanding inability to agree on the causes of EH's toileting issues or on a treatment plan to help resolve those issues. The referee observed that the degree of minutia that had to be addressed in orders to ensure that the child's medical needs were being met was "disturbing," and he noted that he had stated in the past that joint legal custody might not be in EH's best interests. The referee observed that EH's medical needs were of paramount concern; they threatened EH's physiology, education, and mental well-being. Rather than cooperate, each party seemed to sabotage the efforts of the other party to obtain effective treatment for EH. The parties' inability to communicate and to cooperate was related to best-interest factors MCL 722.23(c) (ability and disposition of the parties to provide for child's material needs, including medical care), MCL 722.23(j) (ability to facilitate parent-child relationship with the other party), and MCL 722.23(*l*) (other factors). On the basis of these findings—all of which existed before entry of the ex parte order—the referee concluded that proper cause existed to revisit the governing custody order. There is no evidence that the referee's finding of proper cause was affected by circumstances created by the erroneously entered ex parte order.

Similarly, the referee's finding that an established custodial environment existed with both parties was not based on circumstances created by the ex parte order. Further, given that EH had an established custodial environment, regardless of with whom, the referee concluded that plaintiff's evidentiary burden was that of clear and convincing evidence. Because the trial court's erroneous entry of an ex parte order that changed custody without satisfying the requirements of MCL 722.27(1)(c) does not appear to have lessened plaintiff's evidentiary burden in these proceedings or to have potentially increased defendant's evidentiary burden in further proceedings, we conclude that the error was harmless. See *O'Brien*, 507 Mich at 976; *Daly*, 501 Mich at 898.

## IV. CHANGE OF CUSTODY

Defendant also argues that the trial court committed various legal errors, made findings under MCL 722.23(c), MCL 722.23(h), and MCL 722.23(j) that were against the great weight of the evidence, and palpably abused its discretion by granting plaintiff's motion to change custody. We disagree.

Defendant argues that the trial court committed clear legal error by not articulating the evidentiary burden applicable to plaintiff. Defendant relies on *Griffin v Griffin*, 323 Mich App 110, 123-124; 916 NW2d 292 (2018), to support her position. However, *Griffin* stands for the proposition that a trial court commits legal error when it fails to *apply* the proper standard, not when it merely fails to explicitly state a movant's burden of proof. See *id*. at 114, 123-124. Although the trial court did not articulate the evidentiary burden in its order, the court expressly affirmed the referee's findings and recommendations, which contained a correct statement of plaintiff's burden of proof. The trial court did not commit clear legal error on this issue.

Relatedly, regarding defendant's argument that the trial court failed to consider the impact of plaintiff's proposed change on EH's established custodial environment with defendant, the fact that plaintiff was subject to a clear-and-convincing evidentiary standard in seeking a change of custody was, itself, an indication that the trial court had considered EH's established custodial environment with defendant. See MCL 722.27(1)(c). Assuming the trial court's adoption of the referee's conclusion that the clear-and-convincing-evidence standard applied, the trial court did

not clearly err by not expressly stating on the record the effect of plaintiff's proposed change in custody on the custodial environments established with both parents.

Defendant also argues that the trial court erred by not making findings regarding what evidence supported awarding sole legal and primary custody to plaintiff. The record does not support defendant's argument. The trial court stated that EH had what the court considered to be "significant medical issues" that were not being resolved and that the parties had historically been unable to agree on treatment. The trial court adopted the referee's reasoning, and the referee stated that "overriding importance" of EH's healthcare weighed heavily and that he had placed "significant weight" on factors affecting the child's health and the parents' ability to coparent. The trial court's opinion, read in conjunction with the findings and recommendation of the referee, shows that the trial court based its decision on evidence indicating which parent was more likely to pursue solutions to EH's medical issues.

Defendant also argues that the trial court's findings regarding best-interest factors under MCL 722.23(c), (h), and (j) were against the great weight of the evidence. We disagree.

Factor (c) addresses "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care," and other necessities." MCL 722.23(c). The trial court found that this factor favored plaintiff. Defendant argues that the trial court appeared not to consider, or gave too little weight, to evidence demonstrating defendant's capacity and disposition to seek medical care for EH. It is true that the trial court's opinion did not refer to defendant's testimony regarding her efforts to address EH's medical needs. However, a court is not required to "comment upon every matter in evidence or declare acceptance or rejection of every proposition argued." *Baker v Baker*, 411 Mich 567, 583; 309 NW2d 532 (1981). A court's failure to comment on evidence cannot be construed to mean that the court did not consider the evidence. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). Defendant testified that she accepted that EH's toileting issues would be treated physiologically rather than solely as a behavioral or mental-health issue, that she substantially complied with the treatment recommendations, and that she testified that she would continue to comply with the recommendations. However, she also testified that unlike plaintiff, defendant did not seek out physiological treatment providers, even when ordered to do so by the trial court. Because each parent's willingness to engage in treating EH's toileting issues was central to the trial court's assessment of Factor (c), the trial court's finding was not against the great weight of the evidence.

Factor (h) addresses "[t]he home, school, and community record of the child." MCL 722.23(h). The trial court found that this factor favored plaintiff. Defendant argues that the trial court failed to consider that she sought to facilitate EH's education and community involvement by enrolling her in school, while plaintiff wanted to keep her from school until her toileting issues were resolved. The record shows that both parents were involved in schooling decisions. Defendant was more involved in the day-to-day details of EH's school enrollment and attendance when she had primary physical custody, but plaintiff believed that EH would be better served in the long run by keeping her out of school until her issues were resolved. The parties' dispute over whether EH should attend school while dealing with her toileting issues was a complex one upon which reasonable minds could differ. On this record, we cannot conclude that the trial court's finding that factor (h) favored plaintiff was so contrary to the weight of the evidence that reversal is required. *Fletcher*, 447 Mich at 878.

Factor (j) addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent . . . ." MCL 722.23(j). The trial court found that this factor favored plaintiff on the basis of the parents' inability to communicate and cooperate with respect to EH's medical care. The record is replete with examples of both parties being unable or unwilling to cooperate in co-parenting, and it is likely that EH has intuited the parties' obvious dislike of each other to some degree. However, the trial court found that defendant had hampered communication between the parties by not regularly checking or messaging on OFW, and that defendant had failed to include plaintiff in conversations with EH's therapist. The referee observed that, during the two or three years before the July 2024 hearing, there had been no evidence presented that plaintiff attempted to sabotage EH's relationship with defendant; however, the referee concluded that defendant was more resistant to co-parenting and, at a minimum, had not attempted to sooth EH's fears or anxieties regarding visitation. Given the referee's reasoning and the record evidence, we cannot say that the trial court's finding regarding factor (j) was against the great weight of the evidence.

The trial court's findings regarding best-interest factors (c), (h), and (j) were not against the great weight of the evidence, and defendant has not demonstrated clear legal error or an abuse of discretion. *Fletcher*, 447 Mich at 878. Accordingly, we affirm the trial court's order denying defendant's objections to the referee's recommendation.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron